UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

ANGELA M. GREGORY

v.      Record No. 0455-18-3

PAMELA S. MARTIN

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 6, 2018

FROM THE CIRCUIT COURT OF PULASKI COUNTY
Bradley W. Finch, Judge

(R. Christopher Munique; Lacy, Campbell & Munique, P.C., on
brief), for appellant. Appellant submitting on brief.

No brief for appellee.[1]

Angela M. Gregory (mother) appeals an order denying her motion to amend visitation and

finding that she was withholding her consent to the adoption of her child contrary to the child's best

interests.[2] She argues the circuit court also erred in violating her constitutional due process rights.

We conclude the circuit court applied the wrong standard when finding mother withheld her consent

contrary to the child's best interests and erred in its consideration of her motion to amend visitation.

Accordingly, we reverse the circuit court's decisions and remand for further proceedings.

BACKGROUND

This is the third time this Court has reviewed this case on appeal. We summarize here

the pertinent factual and procedural history. "When reviewing a trial court's decision on appeal,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] R. Cord Hall, guardian *ad litem* for the minor child, submitted a letter in support of the appellee.

[2] Mother is now known as Angela Charlotte Mullins.

we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 552, 811 S.E.2d 835, 838 (2018) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003)).

A daughter was born to mother in 2005. Daughter lived with mother for "about a year" before she went to live with her paternal grandparents. Her paternal grandmother died in 2007. In 2009, mother was convicted of several felonies and sentenced to approximately two years in prison. While mother was in prison, daughter's paternal grandfather moved in with Pamela S. Martin (aunt). Aunt became daughter's primary caretaker. On October 21, 2010, the Pulaski County Juvenile and Domestic Relations District (JDR) Court awarded aunt custody of daughter and ruled that mother would have no visitation. During Christmastime 2010, daughter spent several days and nights with her maternal grandparents and half-siblings. The last time mother visited her daughter was the day before she was arrested in 2009.

While in prison, mother wrote numerous letters to daughter; however, aunt did not give the letters to daughter and did not tell daughter that mother tried to contact her. Mother also wrote letters to aunt asking about daughter's well-being and expressing her desire to establish a relationship with daughter upon mother's release from prison. Aunt responded that she would fight against mother's contact with the child.

The month before mother was to be released, aunt filed a petition in the JDR court for consent to proposed adoption. Daughter's father was in prison and consented to the adoption. Mother was released from prison in February 2011. The day after she was released, she filed a motion in the JDR court to amend visitation. Mother requested "some type of visitation" in order "to reestablish a relationship with [her] daughter." At that point, aunt stopped all contact between daughter and her maternal relatives. On May 9, 2011, the JDR court denied mother's

petition for visitation.  It also found mother was withholding her consent for adoption contrary to the child's best interests and granted aunt's request to proceed with the adoption.  Mother appealed the order to the circuit court, which did not enter a final order in the case until February 11, 2014.  Mother appealed that order to this Court arguing she had not received a *de novo* trial in the circuit court because it refused to allow her to present all her evidence.  This Court held that the circuit court denied mother a *de novo* trial and violated her due process rights.  We reversed and remanded the case for a *de novo* trial.  Gregory v. Martin, No. 0431-14-3, 2014 Va. App. LEXIS 312 (Va. Ct. App. Sept. 16, 2014).

On remand, after a *de novo* trial, the circuit court again entered an order that denied mother's motion for visitation and found she withheld her consent to aunt's petition for adoption. Mother appealed that decision to this Court.  This Court held that the circuit court erred by not allowing mother to present evidence about her relationship with the child prior to October 21, 2010, which was the date custody was given to aunt, and erred in concluding that there was no change of circumstances.  The circuit court's order was reversed, and the matter was remanded to the circuit court for further proceedings.  Gregory v. Martin, No. 0816-15-3, 2016 Va. App. LEXIS 199 (Va. Ct. App. July 19, 2016).

On remand, the circuit court held a new trial on August 31, 2017.  At this point, daughter was twelve years old, and mother had been out of prison for about six and a half years.  Mother admitted she was not a good parent prior to her incarceration because of her extensive drug use. Prior to her incarceration, she visited her daughter about once or twice a month and brought her two older daughters with her when she did visit.  Mother testified that she had been drug-free since she was incarcerated in 2009 and had not failed any drug screens while she was on probation, which she completed two and a half years early.  Mother found full-time work in a doctor's office, obtained her driver's license, bought a vehicle, and had her civil rights restored.

In 2015, mother gained physical custody of her two older children, who were doing well at the time of the hearing. Aunt testified that daughter was doing exceedingly well in school and was involved in many activities. Daughter's bond with aunt and grandfather was strong. Aunt had not told daughter that her mother wanted to visit her. She was concerned that daughter would be emotionally hurt if mother relapsed into drug use.

The circuit court found a material change of circumstances and that "mother's circumstances have changed dramatically. She has improved . . . her life, and her condition, and really everything about her life, and . . . that's a wonderful thing." The circuit court, however, found that amending visitation was not in daughter's best interests. Additionally, the circuit court found mother was withholding her consent for the adoption contrary to the best interests of the child. This appeal followed.

ANALYSIS

A. Standard of Review

"Because the circuit court heard evidence *ore tenus*, its factual findings are 'entitled to the same weight accorded a jury verdict[] and . . . will not be disturbed on appeal unless plainly wrong or without evidence to support' them." Geouge v. Traylor, 68 Va. App. 343, 347, 808 S.E.2d 541, 543 (2017) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 44, 764 S.E.2d 284, 289 (2014)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Castillo, 68 Va. App. at 558, 811 S.E.2d at 841 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005)).

> The Virginia Supreme Court has identified three principal ways by which a circuit court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper

ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

Rubino v. Rubino, 64 Va. App. 256, 262, 767 S.E.2d 260, 263 (2015) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)).

## B. Visitation

Mother argues that the trial court erred when it found the evidence sufficient to deny her motion to amend visitation.

"A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Stadter v. Siperko, 52 Va. App. 81, 88, 661 S.E.2d 494, 497 (2008). "When a party has filed a petition to modify an existing visitation order, the courts must apply the Supreme Court's two-pronged test enunciated in Keel v. Keel, 225 Va. 606, 303 S.E.2d 917 (1983), to determine whether modification of that order is proper." Rhodes v. Lang, 66 Va. App. 702, 709, 791 S.E.2d 744, 747 (2016). "That test asks, 'first, has there been a change in circumstances since the most recent custody award; second, would a change in custody be in the best interests of the children.'" Id. (quoting Keel, 225 Va. at 611, 303 S.E.2d at 921).

Here, the circuit court found the "mother's circumstances have changed dramatically. She has improved her, her life, and her condition, and really everything about her life, and, and that is a - that's a wonderful thing." It found there had been a change in circumstances, and that prong of the test is not before us. We conclude, however, that the circuit court erred in its consideration of the factors regarding whether a change in visitation would be in the child's best interests.

"'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Welch, 64 Va. App. at 48, 764 S.E.2d at 291 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "Instead, 'the question must be resolved . . . in

light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407 (1982)).

Code § 20-124.3 provides ten factors for the court to consider "[i]n determining best interests of a child for purposes of determining custody or visitation."[3]  Mother's petition to amend visitation asked for "some type of visitation" to "reestablish a relationship" with daughter. Here, however, the circuit court did not consider the factors through the lens of whether "some type of visitation" was in the best interest of daughter.  Rather, the circuit court focused on the length of time that mother was separated from daughter, despite the fact that mother had been trying to contact her daughter since her incarceration and had sought visitation immediately upon her release.

For example, when the court considered the first Code § 20-124.3 factor, daughter's "age, physical and mental condition of the child, giving due consideration to the child's changing developmental needs," the court found daughter to be a "happy, healthy, appropriately developing girl for her age."  The court then concluded

> I find that that factor weighs in favor of [aunt].  It weighs in favor of the aunt because the fact is, and this is undisputed, that for many years now this child has lived with her aunt, been cared for by her aunt, and her aunt has been instrumental in the child's physical and mental condition and changing developmental needs.

The court, in essence, considered as a factor which of the two parties had contributed more to daughter's development and well-being.  However, the circuit court failed to consider that mother had been trying to visit with her daughter since she was released from prison, but it took years for her case to be heard.

---

[3] Although Code § 20-124.3 permits the court to consider factors other than those listed in the code section, the circuit court expressly stated it considered no other factors.

In addressing the second factor regarding the "age, physical and mental condition of each parent," the court "consider[ed] the mother and then also the custodian, . . . the aunt." The circuit court found that mother had overcome her substance abuse addiction and was "doing very well." The circuit court concluded that neither mother nor the aunt's age, physical or mental condition "would be in any way viewed negatively in this matter."

In addressing the third factor concerning the relationship with the child, the positive involvement in the child's life, and the ability to meet the needs of the child, the circuit court focused on the quality of aunt's relationship with daughter. It also found that mother could meet daughter's emotional, intellectual, and physical needs, yet the circuit court emphasized that daughter had had "very minimal contact with her mother in her life and certainly in recent years." The circuit court did not consider the factor in the context of whether a reestablishment of the mother-daughter relationship through visitation was or was not in the daughter's best interest.

In addressing the fourth factor, which is the "needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members," the court considered daughter's strong bond with her paternal relatives and the limited relationship with her maternal relatives, including two half-siblings. The court did not consider, given daughter's strong bond with her paternal relatives, whether it was or was not in daughter's best interests to expand her relationships with her maternal relatives. In addition, the circuit court found that daughter's relationships with her half-siblings had been "very limited" and that "over the last several years she has had little to no relationship with those siblings." Again, however, the circuit court failed to consider that mother had been seeking to build the relationship between daughter and her half-siblings, but the delay in the court process prevented her from having her motion heard for six years.

Likewise, in considering the fifth factor regarding the "role that each parent has played and will play in the future," the circuit court emphasized that aunt's role in daughter's life had been "substantial" and mother's role was "minimal." The circuit court did not consider the time that it took for the case to be brought forward for trial and that mother had been trying to have a greater role in daughter's life.

For the sixth factor, regarding the "propensity of each parent to actively support the child's contact and relationship with the other parent, including whether a parent has unreasonably denied the other parent access to or visitation with the child," the circuit court concluded that there were "disputes in the evidence as far as whether [aunt] has tried to prevent mother from seeing the child or having contact with the child." However, this ruling ignores the evidence that aunt never gave mother's letters to daughter or told her that mother was trying to see her. The circuit court also did not consider the evidence that aunt told mother that she was "going to . . . do her best to keep [mother] out of [daughter's] life."

In considering the seventh factor regarding the "willingness of the parent to maintain a close and continuing relationship with the child," the court found both mother and aunt were willing to maintain a relationship, but that aunt's relationship had been much stronger. It did not consider how the relationship of each party factored into the determination of whether it was or was not in daughter's best interest for some type of visitation. The court was not required to explain its reasoning, but it is significant that when it elaborated on each factor it did not consider that factor in the context of benefit or detriment of "some type of visitation" between daughter and her mother.

Finally, the circuit court concluded there had "not been evidence presented as to the reasonable preference of the child." The undisputed evidence and the guardian *ad litem*'s statements to the court showed that the child had not been given an opportunity to express a

preference regarding visitation because aunt had kept from daughter the knowledge that mother was seeking contact.

In summary, mother's petition to amend visitation requested only "some type of visitation" in order "to reestablish a relationship with [her] daughter." The circuit court considered the Code § 20-124.3 factors, but failed to consider the factors in a light relevant to whether it was in daughter's best interests to have some sort of visitation with mother. The circuit court erroneously focused on the fact that mother had not had contact with the child since her release from incarceration; however, the evidence proved that mother had sought visitation with daughter immediately after her release from prison. We find that the evidence did not support the circuit court's ruling to deny mother's petition to amend visitation.

## C. Withhold consent

Mother argues that the circuit court erred by finding that the evidence was sufficient to prove that she was withholding her consent to the adoption contrary to the child's best interests.

"'[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by' the United States Supreme Court." Geouge, 68 Va. App. at 368, 808 S.E.2d at 553 (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion)). "We have consistently held that to grant a petition for adoption over a birth parent's objection, there must be more than a mere finding that the adoption would promote the child's best interests." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011) (citing Malpass v. Morgan, 213 Va. 393, 398-99, 192 S.E.2d 794, 798-99 (1972)). "Virginia's statutory scheme for adoption, including Code §§ 63.2-1205 and -1208, defines the best interests of the child in terms that require more expansive analysis than when the contest is between two biological parents." Id. at 199, 715 S.E.2d at 20.

Code § 63.2-1205 states:

> In determining whether the valid consent of any person whose
> consent is required is withheld contrary to the best interests of the
> child, . . . the circuit court . . . shall consider whether granting the
> petition pending before it would be in the best interest of the child.
> The circuit court . . . shall consider all relevant factors, including
> the birth parent(s)' efforts to obtain or maintain legal and physical
> custody of the child; whether the birth parent(s) are currently
> willing and able to assume full custody of the child; whether the
> birth parent(s)' efforts to assert parental rights were thwarted by
> other people; the birth parent(s)' ability to care for the child; the
> age of the child; the quality of any previous relationship between
> the birth parent(s) and the child and between the birth parent(s) and
> any other minor children; the duration and suitability of the child's
> present custodial environment; and the effect of a change of
> physical custody on the child.

The circuit court thoroughly examined each of the Code § 63.2-1205 factors and found in

favor of mother with several of the factors. For example, in considering the first factor regarding

"the birth parent(s)' efforts to obtain or maintain legal and physical custody of the child," the

circuit court held that "early in [daughter's] life there was little or no effort on the part of the

mother to maintain legal and physical custody of the child." Then, the circuit court found that

"mother, since her incarceration and since her release, had made very serious efforts to, to

maintain or to obtain custody of her child." In considering the second factor regarding "whether

the birth parent(s) are currently willing and able to assume full custody of the child," the circuit

court held that "mother is willing and able to assume custody of the child." In considering the

fourth factor regarding "the birth parent(s)' ability to care for the child," the circuit court held

that mother was able to care for the child.

For the remaining factors, the evidence did not support the circuit court's findings, and

the circuit court inappropriately placed too much weight on the length of time that mother had

not seen the child while she was pursuing her appeals. For example, in considering the third

factor regarding "whether the birth parent(s)' efforts to assert parental rights were thwarted by

other people," the circuit court found that in her daughter's early years, mother "had very little involvement" with her, primarily because of her drug addiction and incarceration. Then, the circuit court held that mother's parental rights were not thwarted by other people after she was released from prison. However, it noted that there were contested, legal proceedings, which "may have prevented" mother from asserting her parental rights. The circuit court ignored the evidence that mother wrote to daughter and to aunt while she was in prison, and aunt told mother that she was "going to . . . do her best to keep [mother] out of [daughter's] life." Aunt did not tell daughter about the letters or that her mother was trying to contact her.

Similarly, in analyzing other Code § 63.2-1205 factors, the circuit court erroneously held against mother the time that she was apart from daughter while the litigation and appeals were proceeding. With respect to the fifth factor and the child's age, the circuit court found that daughter was twelve years old and had been living with the aunt for many years. However, the circuit court ignored the facts that mother had filed a petition for visitation in 2011 and the lengthy court proceedings prevented her from having her case heard in circuit court from 2011 until 2017. In considering the sixth factor regarding "the quality of any previous relationship between the birth parent(s) and the child and between the birth parent(s) and any other minor children," the circuit court found that "there has been little, if any, relationship between the mother and [daughter]." The circuit court noted that "since the incarceration, there still has not been a, a quality relationship" and that "[t]here's essentially no relationship now." However, the lack of a current relationship between mother and daughter resulted from the length of the court proceedings, not mother's actions. Mother had been trying to have a relationship with daughter since she was incarcerated by writing letters and filing for a motion to modify visitation as soon as she was released from prison. With respect to the seventh factor and "the duration and suitability of the child's present custodial environment," the circuit court found that "it has been

a steady custodial relationship that has been continuous for many years now." Again, the circuit court focused on conditions that were out of mother's control. Daughter had been in the same situation despite mother's attempts to have her case heard. In considering the eighth factor and "the effect of a change of physical custody on the child," the circuit court held that it would be "very difficult to know" how a change in physical custody would affect daughter. There was no medical or expert evidence offered on this factor. The circuit court noted that daughter was thriving in her current environment.

The circuit court's findings relied heavily on the fact that mother had not seen daughter since 2009; however, the circuit court ignored aunt's actions and the length of the court proceedings. Accordingly, we find that the circuit court did not properly consider the Code § 63.2-1205 factors in light of the evidence presented, so the circuit court's ruling that mother withheld her consent to the adoption contrary to the best interests of the child is reversed and remanded. See Geouge, 68 Va. App. at 371, 808 S.E.2d at 554 ("so long as the circuit court properly considered the statutory factors, we can reverse its conclusions only if they are beyond the pale of reasonableness).

### D. Due process

Mother argues that the circuit court violated her due process rights "by committing errors against her that resulted in the trial of this case beginning on September 16, 2011 and eventually ending on August 31, 2017."

"[A]s an appellate court, we seek the best and narrowest ground available for our decision." Geouge, 68 Va. App. at 377, 808 S.E.2d at 557 (quoting Harvey v. Commonwealth, 65 Va. App. 280, 285 n.2, 777 S.E.2d 231, 234 n.2 (2015)). Therefore, considering the above holdings, we will not address this assignment of error.

- 12 -

CONCLUSION

The circuit court abused its discretion by not considering the Code § 20-124.3 factors or the Code § 63.2-1205 factors in light of the procedural history and evidence presented. We therefore reverse these decisions and remand for further proceedings.

<u>Reversed and remanded.</u>

Petty, J., concurring.

I concur with the majority that this case must once again be remanded to the trial court for further consideration. I choose to write separately, however, because I believe that there is an additional consideration that, like the proverbial elephant in the room, cannot be ignored. When weighing the factors set out in Code § 63.2-1205, the trial court must be mindful that the "meaning of 'the best interests of the child' is different in the context of adoptions, and must be read in light of the biological parent's due process rights in her relationship to her child." Copeland v. Todd, 282 Va. 183, 197, 715 S.E.2d 11, 19 (2011).

The United States Supreme Court has "recognized on numerous occasions that the relationship between parent and child is constitutionally protected." Quilloin v. Walcott, 434 U.S. 246, 255 (1978).

> We have little doubt that the Due Process Clause would be offended [if] a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.

Copeland, 282 Va. at 198-99, 715 S.E.2d at 19 (alteration in original) (quoting Quilloin, 434 U.S. at 255). Moreover, "[t]o separate a child from its parents, the evidence of their unfitness must be cogent and convincing." Judd v. Van Horn, 195 Va. 988, 995, 81 S.E.2d 432, 436 (1954).

Here, the circuit court made specific findings that "mother is willing and able to assume custody of the child," that mother "does appear to be able to care for the child," and that "there's no indication that the mother could not [meet] the emotional, intellectual, and physical needs of [daughter]." Nothing in the record indicates that the circuit court found cogent and convincing evidence that would overcome "the [mother's] due process rights in her relationship to her child." Copeland, 282 Va. at 197, 715 S.E.2d at 19. On remand, "[t]he eight factors in Code

§ 63.2-1205 . . . compel [the] court to consider whether [in this case] a parent's unfitness would be harmful to the child's welfare." Id. at 199, 715 S.E.2d at 24.